**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
(Greenbelt Division)**

| | |
|---|---|
| DAN L. BOGER on behalf of himself and others similarly situated, : : : Plaintiff, : : v. : : : ENERGY TELEMARKETERS INCORPORATION and NATIONAL GAS & ELECTRIC, LLC : : : Defendants. : : / | Case No. |

## CLASS ACTION COMPLAINT

**Preliminary Statement**

1. Plaintiff Dan L. Boger ("Mr. Boger") ("Plaintiff") brings this action to enforce the consumer-privacy provisions of the Telephone Consumer Protection Act, 47 U.S.C. § 227, a federal statute enacted in 1991 in response to widespread public outrage about the proliferation of intrusive, nuisance telemarketing practices. *See Mims v. Arrow Fin. Servs., LLC,* 132 S. Ct. 740, 745 (2012).

2. In violation of the TCPA and the Maryland Telephone Consumer Protection Act, Md. Code Ann. Com. Law §§ 14-3201, *et seq.*, ("Maryland TCPA"), National Gas & Electric, LLC ("National Gas & Electric") hired the co-defendant, Energy Telemarketers Incorporation ("Energy Telemarketers"), who made multiple telemarketing calls to a cellular telephone number of Mr. Boger for the purposes of advertising National Gas & Electric goods and services using an automated dialing system, which is prohibited by the TCPA.

3. The Plaintiff never consented to receive the calls, which were placed to him for telemarketing purposes. Because telemarketing campaigns generally place calls to thousands or even millions of potential customers *en masse*, the Plaintiff brings this action on behalf of proposed nationwide classes of other persons who received illegal telemarketing calls from or on behalf of the Defendants.

4. A class action is the best means of obtaining redress for the Defendants' wide scale illegal telemarketing and is consistent both with the private right of action afforded by the TCPA and the fairness and efficiency goals of Rule 23 of the Federal Rules of Civil Procedure.

## Parties

5. Plaintiff Dan L. Boger is a resident of the state of Maryland and this District.

6. Defendant National Gas & Electric, LLC is a Texas corporation that has its principal office in Houston, Texas and a registered agent of CT Corporation System, 208 So. Lasalle St., Suite 814, Chicago, IL 60604. Defendant National Gas & Electric themselves, and through third parties, place telemarketing calls into this District, as they did with the Plaintiff.

7. Defendant Energy Telemarketers Incorporation is a Pennsylvania corporation that has its principal office at 93 Barker Ave. in Sharon Hill, PA and a registered agent of the Secretary of State. Energy Telemarketers places telemarketing calls into this District, as they did with the Plaintiff.

## Jurisdiction & Venue

8. The Court has federal question subject matter jurisdiction over these TCPA claims. *Mims v. Arrow Financial Services, LLC*, 132 S. Ct. 740 (2012).

9. Venue is proper pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred in this District as the telemarketing calls that gave rise to the Plaintiff's claims were made into this District.

## The Telephone Consumer Protection Act

10. In 1991, Congress enacted the TCPA to regulate the explosive growth of the telemarketing industry. In so doing, Congress recognized that "[u]nrestricted telemarketing . . . can be an intrusive invasion of privacy [.]" Telephone Consumer Protection Act of 1991, Pub. L. No. 102-243, § 2(5) (1991) (codified at 47 U.S.C. § 227).

<u>The National Do Not Call Registry</u>

11. The National Do Not Call Registry allows consumers to register their telephone numbers and thereby indicate their desire not to receive telephone solicitations at those numbers. *See* 47 C.F.R. § 64.1200(c)(2). A listing on the Registry "must be honored indefinitely, or until the registration is cancelled by the consumer or the telephone number is removed by the database administrator." *Id*.

12. The TCPA and implementing regulations prohibit the initiation of telephone solicitations to residential telephone subscribers to the Registry. 47 U.S.C. § 227(c); 47 C.F.R. § 64.1200(c)(2).

<u>The TCPA Prohibits Automated Telemarketing Calls</u>

13. The TCPA makes it unlawful "to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using an automatic telephone dialing system or an artificial or prerecorded voice … to any telephone number assigned to a … cellular telephone service." *See* 47 U.S.C. § 227(b)(1)(A)(iii). The

TCPA provides a private cause of action to persons who receive calls in violation of 47 U.S.C. § 227(b)(1)(A). *See* 47 U.S.C. § 227(b)(3).

14. According to findings by the Federal Communication Commission ("FCC"), the agency Congress vested with authority to issue regulations implementing the TCPA, such calls are prohibited because, as Congress found, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls, and such calls can be costly and inconvenient.

15. The FCC also recognized that "wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used." *In re Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, CG Docket No. 02-278, Report and Order, 18 F.C.C. Rcd. 14014, 14115 ¶ 165 (2003).

16. In 2013, the FCC required prior express written consent for all autodialed or prerecorded telemarketing calls ("robocalls") to wireless numbers and residential lines. Specifically, it ordered that:

> [A] consumer's written consent to receive telemarketing robocalls must be signed and be sufficient to show that the consumer: (1) received "clear and conspicuous disclosure" of the consequences of providing the requested consent, i.e., that the consumer will receive future calls that deliver prerecorded messages by or on behalf of a specific seller; and (2) having received this information, agrees unambiguously to receive such calls at a telephone number the consumer designates.[] In addition, the written agreement must be obtained "without requiring, directly or indirectly, that the agreement be executed as a condition of purchasing any good or service.[]"

*In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 27 F.C.C. Rcd. 1830, 1844 (2012) (footnotes omitted).

The TCPA Requires Telemarketers to Identify Themselves

17. The TCPA's implementing regulations prohibit any company from initiating any telemarketing call unless the company has implemented internal procedures for maintaining a

list of persons who request not to be called by the entity. 47 C.F.R. 64.1200(d). Such internal procedures must meet certain minimum requirements to allow the entity to initiate telemarketing calls. 47 C.F.R. 64.1200(d)(1)-(6).

18. This includes the requirement that "[a] person or entity making a call for telemarketing purposes must provide the called party with the name of the individual caller, the name of the person or entity on whose behalf the call is being made, and a telephone number or address at which the person or entity can be contacted." 47 C.F.R. 64.1200(d)(4).

19. Pursuant to 47 C.F.R. 64.1200(e), the rules set forth above in 47 C.F.R. 64.1200(d) are "applicable to any person or entity making telephone solicitations or telemarketing calls to wireless telephone numbers…."

**Factual Allegations**

20. National Gas & Electric provides residential electric services to its customers.

21. To generate business through sales, National Gas & Electric relies on telemarketing.

22. However, National Gas & Electric often outsources its telemarketing to third parties, like Energy Telemarketers.

23. One of National Gas & Electric's strategies for telemarketing involves the use of an automatic telephone dialing system ("ATDS") to solicit business by third parties.

24. National Gas & Electric engages this use of this equipment because it allows for thousands of automated calls to be placed at one time, but its telemarketing representatives, who are paid by the hour, only talk to individuals who pick up the telephone.

25. Through this method, National Gas & Electric shifts the burden of wasted time to the consumers it calls with unsolicited messages.

Calls to Mr. Boger

26. Plaintiff is, and at all times mentioned herein, a "person" as defined by 47 U.S.C. § 153(39).

27. Mr. Boger's telephone number, (703) 328-XXXX, is assigned to a cellular telephone service.

28. Mr. Boger placed his cellular telephone number, (703) 328-XXXX, on the National Do Not Call Registry more than five years ago.

29. Despite taking the affirmative step of registering his telephone number on the National Do Not Call Registry, Energy Telemarketers placed a telemarketing call to him on December 3, 2018.

30. When the call was answered, there was a lengthy pause and a click before anyone came on the line, which indicated to the Plaintiff that the call was made using an ATDS.

31. The call was made from the Caller ID (800) 685-0123. The Plaintiff had previously received but missed two calls from this same Caller ID number on November 28, 2018.

32. When the Plaintiff finally connected with a live person, that individual identified themselves as "Jake".

33. When the Plaintiff finally connected with a live person, that individual identified themselves as "Jake".

34. "Jake" stated that he was calling from Pepco, a regional energy supplier.

35. As the source of the call was identified in later correspondence, "Jake" was not from Pepco.

6

36. "Jake" informed Mr. Boger that he could save up to 30% on his energy bill, Mr. Boger asked "Jake" for his company's website, but did not get a response.

37. Mr. Boger then informed "Jake" that he was not able to talk at the moment and the call was disconnected.

38. Concerned about the call, Mr. Boger called Pepco about the telemarketing call, and spoke with an employee who confirmed that Pepco was not affiliated with the caller.

39. Mr. Boger then received a second telemarketing call from Energy Telemarketers on December 3, 2018.

40. When the call was answered, there was a lengthy pause and a click before anyone came on the line, which indicated to the Plaintiff that the call was made using an ATDS.

41. The call was made from the Caller ID (800) 685-0123.

42. When the Plaintiff finally connected with a live person, that individual identified themselves as "Jake" again.

43. To investigate the call, Mr. Boger listened to the sales pitch and was told that another individual would call him.

44. Later that day, a Charles Cohn from National Gas & Electric contacted Mr. Boger.

45. Mr. Boger further listened to the sales pitch to verify the identity of the caller.

46. The calls continued.

47. On December 4, 2018, Mr. Boger received another telemarketing call from Energy Telemarketers, Inc.

48. When the call was answered, there was a lengthy pause and a click before anyone came on the line, which indicated to the Plaintiff that the call was made using an ATDS.

7

49. Mr. Boger also said "hello" multiple times to no response, further indicating the use of an ATDS.

50. The call was made from the Caller ID (585) 419-0814.

51. On this call, a "Grace" claimed to be calling about the Plaintiff's Pepco bill and claimed that she was with customer service for Pepco.

52. Similar to "Jake", this is believed to be untrue and she was instead an employee of Energy Telemarketers.

53. Mr. Boger asked "Grace" if she was with National Gas & Electric and she said no, instead insisting that she was with Pepco, but that National Gas & Electric would be activating the account.

54. Mr. Boger then terminated the call.

55. Mr. Boger also is believed to have received at least 10 other calls from these numbers that called him.

56. The calls were not necessitated by an emergency.

57. Plaintiff's privacy has been violated by the above-described telemarketing robocalls from, or on behalf of, Defendants. The calls were an annoying, harassing nuisance.

58. Plaintiff and all members of the Class, defined below, have been harmed by the acts of Defendants because their privacy has been violated, they were annoyed and harassed, and, in some instances, they were charged for incoming calls. The calls occupied his cellular telephone lines, rendering them unavailable for legitimate communication.

### National Gas & Electric's Liability

59. For more than twenty years, the FCC has explained that its "rules generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for

8

any violations." *In re Rules & Regulations Implementing the TCPA*, CC Docket No. 92-90, Memorandum Opinion and Order, 10 FCC Rcd 12391, 12397 (¶ 13) (1995).

60. On May 9, 2013, the FCC released a Declaratory Ruling holding that a corporation or other entity that contracts out its telephone marketing "may be held vicariously liable under federal common law principles of agency for violations of either section 227(b) or section 227(c) that are committed by third-party telemarketers."[1]

61. In that ruling, the FCC instructed that sellers such as National Gas & Electric may not avoid liability by outsourcing telemarketing:

> [A]llowing the seller to avoid potential liability by outsourcing its telemarketing activities to unsupervised third parties would leave consumers in many cases without an effective remedy for telemarketing intrusions. This would particularly be so if the telemarketers were judgment proof, unidentifiable, or located outside the United States, as is often the case. Even where third-party telemarketers are identifiable, solvent, and amenable to judgment limiting liability to the telemarketer that physically places the call would make enforcement in many cases substantially more expensive and less efficient, since consumers (or law enforcement agencies) would be required to sue each marketer separately in order to obtain effective relief. As the FTC noted, because "[s]ellers may have thousands of 'independent' marketers, suing one or a few of them is unlikely to make a substantive difference for consumer privacy."

*May 2013 FCC Ruling*, 28 FCC Rcd at 6588 (¶ 37) (internal citations omitted).

62. The May 2013 FCC Ruling held that, even absent evidence of a formal contractual relationship between the seller and the telemarketer, a seller is liable for telemarketing calls if the telemarketer "has apparent (if not actual) authority" to make the calls. 28 FCC Rcd at 6586 (¶ 34).

63. The May 2013 FCC Ruling further clarifies the circumstances under which a telemarketer has apparent authority:

---

[1] *In re Joint Petition Filed by DISH Network, LLC et al. for Declaratory Ruling Concerning the TCPA Rules*, 28 FCC Rcd 6574, 6574 (¶ 1) (2013) ("May 2013 FCC Ruling").

> [A]pparent authority may be supported by evidence that the seller allows the outside sales entity access to information and systems that normally would be within the seller's exclusive control, including: access to detailed information regarding the nature and pricing of the seller's products and services or to the seller's customer information. The ability by the outside sales entity to enter consumer information into the seller's sales or customer systems, as well as the authority to use the seller's trade name, trademark and service mark may also be relevant. It may also be persuasive that the seller approved, wrote or reviewed the outside entity's telemarketing scripts.  Finally, a seller would be responsible under the TCPA for the unauthorized conduct of a third-party telemarketer that is otherwise authorized to market on the seller's behalf if the seller knew (or reasonably should have known) that the telemarketer was violating the TCPA on the seller's behalf and the seller failed to take effective steps within its power to force the telemarketer to cease that conduct.

FCC Rcd at 6592 (¶ 46).

64. National Gas & Electric has previously been sued alleging that Energy Telemarketers was making illegal calls on their behalf.

65. Among other things, the plaintiff in a previous lawsuit, prior to the calls at issue in this case, complained that Energy Telemarketers' and another company's telephone sales representatives misrepresented the identity of their company to him.

66. By having Energy Telemarketers make calls on behalf of its agents to generate new business, National Gas & Electric "manifest[ed] assent to another person . . . that the agent shall act on the principal's behalf and subject to the principal's control" as described in the Restatement (Third) of Agency.

67. Moreover, National Gas & Electric and their exclusive agents maintained interim control over Energy Telemarketers' actions.

68. For example, National Gas & Electric had absolute control over whether, and under what circumstances, it would accept a customer.

69. Furthermore, National Gas & Electric had day-to-day control over Energy Telemarketers' actions, including the ability to prohibit it from using an ATDS to contact potential customers of National Gas & Electric.

70. Energy Telemarketers transferred customer information directly to National Gas & Electric. Thus, the company that National Gas & Electric hired has the "ability . . . to enter consumer information into the seller's sales or customer systems," as discussed in the May 2013 FCC Ruling.

71. Finally, the May 2013 FCC Ruling states that called parties may obtain "evidence of these kinds of relationships . . . through discovery, if they are not independently privy to such information." *Id.* at 6592-593 (¶ 46). Evidence of circumstances pointing to apparent authority on behalf of the telemarketer "should be sufficient to place upon the seller the burden of demonstrating that a reasonable consumer would not sensibly assume that the telemarketer was acting as the seller's authorized agent." *Id.* at 6593 (¶ 46).

## **Class Action Allegations**

72. As authorized by Rule 23 of the Federal Rules of Civil Procedure, Plaintiff brings this action on behalf of classes of all other persons or entities similarly situated throughout the United States.

73. The classes of persons Plaintiff proposes to represent are tentatively defined as:

CLASS 1

All persons within the United States to whom: (a) Energy Telemarketers and/or a third party acting on their behalf, made one or more non-emergency telephone calls; (b) promoting National Gas & Electric products or services; (c) to their cellular telephone number; (d) using an automatic telephone dialing system or an artificial or prerecorded voice; and (e) at any time in the period that begins four years before the date of the filing of this Complaint to trial.

MARLYAND TCPA SUBCLASS

> All Maryland Residents to whom: (a) Energy Telemarketers and/or a third party acting on their behalf, made one or more non-emergency telephone calls; (b) promoting National Gas & Electric products or services; (c) to their cellular telephone number; (d) using an automatic telephone dialing system or an artificial or prerecorded voice; and (e) at any time in the period that begins three years before the date of the filing of this Complaint to trial.
>
> ### CLASS 2
>
> All natural persons within the United States to whom: (a) Energy Telemarketers and/or a third party acting on their behalf, made two or more calls in a twelve-month period; (b) promoting National Gas & Electric products or services; (c) at any time in the period that begins four years before the date of the filing of this Complaint to trial.
>
> ### MARYLAND TCPA SUBCLASS
>
> All Maryland residents to whom: (a) Energy Telemarketers and/or a third party acting on their behalf, made two or more calls in a twelve-month period; (b) promoting National Gas & Electric products or services; (c) at any time in the period that begins three years before the date of the filing of this Complaint to trial.

Excluded from the classes are the Defendants, and any entities in which the Defendants have a controlling interest, the Defendants' agents and employees, any judge to whom this action is assigned and any member of such judge's staff and immediate family.

74. The classes as defined above are identifiable through phone records and phone number databases.

75. The potential class members number at least in the thousands, since automated telemarketing campaigns make calls to hundreds or thousands of individuals a day. Individual joinder of these persons is impracticable.

76. Plaintiff is a member of the proposed classes.

77. There are questions of law and fact common to Plaintiff and to the proposed classes, including but not limited to the following:

  a. Whether Defendants violated the TCPA by using automated telemarketing to call cellular telephones;

  b. Whether Defendants placed calls using an automatic telephone dialing system;

  c. Whether National Gas & Electric is vicariously liable for the conduct of Energy Telemarketers;

  d. Whether Energy Telemarketers misrepresented their identity;

  e. Whether Defendants placed calls without obtaining the recipients' prior consent for the call;

  f. Whether the Plaintiff and the class members are entitled to statutory damages because of Defendants' actions.

 78. Plaintiff's claims are typical of the claims of class members. Plaintiff's claims, like the claims of the classes, arise out of the same common course of conduct by the Defendants and are based on the same legal and remedial theories.

 79. Plaintiff is an adequate representative of the classes because his interests do not conflict with the interests of the classes, he will fairly and adequately protect the interests of the classes, and he is represented by counsel skilled and experienced in class actions, including TCPA class actions.

 80. Common questions of law and fact predominate over questions affecting only individual class members. The only individual question concerns identification of class members, which will be ascertainable from records maintained by Defendants and/or their agents.

81.     Management of these claims is likely to present significantly fewer difficulties than are presented in many class claims because the calls at issue are all automated.  Class treatment is superior to multiple individual suits or piecemeal litigation because it conserves judicial resources, promotes consistency and efficiency of adjudication, provides a forum for small claimants, and deters illegal activities.  There will be no significant difficulty in the management of this case as a class action.

82.     The likelihood that individual members of the classes will prosecute separate actions is remote due to the time and expense necessary to prosecute an individual case.

83.     Plaintiff is not aware of any litigation concerning this controversy already commenced by others who meet the criteria for class membership described above.

## Causes of Action

### Count One:
### Violation of the TCPA's Automated Calling provisions

84.     Plaintiff Boger incorporates the allegations from all previous paragraphs as if fully set forth herein.

85.     The foregoing acts and omissions of the Defendants constitute violations of the TCPA, 47 U.S.C. § 227, by making calls, except for emergency purposes, to the cellular telephone numbers of Plaintiff and members of the class using an ATDS and/or artificial or prerecorded voice.

86.     As a result of the Defendants' violations of the TCPA, 47 U.S.C. § 227, Plaintiff and members of the class presumptively are entitled to an award of $500 in damages for each and every call made to their cellular telephone numbers using an ATDS and/or artificial or prerecorded voice in violation of the statute, pursuant to 47 U.S.C. § 227(b)(3)(B). The Court may award up to $1,500 if the violation was found to be "knowing or willful". *Id.*

87. Plaintiff and members of the class are also entitled to and do seek injunctive relief prohibiting Defendants from violating the TCPA, 47 U.S.C. § 227, by making calls, except for emergency purposes, to any cellular telephone numbers using an ATDS and/or artificial or prerecorded voice in the future.

## Count Two:
## Violation of the TCPA's Do Not Call provisions

88. Plaintiff Boger incorporates the allegations from all previous paragraphs as if fully set forth herein.

89. The foregoing acts and omissions of the Defendants constitute violations of the FCC's regulations implementing subsection 227(c) of the TCPA which prohibit anyone from making any call for telemarketing purposes to any residential or wireless telephone subscriber unless the caller has implemented the required minimum procedures for maintaining a list of persons who do not want to receive calls made by or on behalf of such person or entity. 47 C.F.R. 64.1200(d).

90. While calling on behalf of National Gas & Electric, Energy Telemarketers misrepresented its identity to the Plaintiff.

91. National Gas & Electric was explicitly put on notice that Energy Telemarketers sales representatives and sales representatives of its other telemarketing vendors were misrepresenting their identity to consumers, however they took no actions to cause Energy Telemarketers to cease that conduct.

92. The Defendants' violations were willful and/or knowing.

## Count Three:
## Violation of the Maryland Telephone Consumer Protection Act

93.     Plaintiff Boger incorporates the allegations from all previous paragraphs as if fully set forth herein.

94.     The foregoing acts and omissions of the Defendants constitute violations of the Maryland Telephone Consumer Protection Act, Md. Code Ann. Com. Law §§ 14-3201, *et seq.*, which prohibits a person from violating the TCPA. Here, as alleged above, the Defendants violated to the TCPA by making calls, except for emergency purposes, to the cellular telephone numbers of Plaintiff and members of the Class using an ATDS and/or artificial or prerecorded voice and by misrepresenting the identity of the caller.

95.     As a result of the Defendants violations of the Maryland TCPA, Plaintiff and members of the Class presumptively are entitled to an award of $500 in damages for each and every call made to their cellular telephone numbers using an ATDS and/or artificial or prerecorded voice in violation of the statute, pursuant to Md. Code Ann. Com. Law § 14-3202(b)(2)(i) as well as their attorneys fees pursuant to Md. Code Ann. Com. Law § 14-3202(b)(1).

## Relief Sought

For himself and all class members, Plaintiff requests the following relief:

A.      Certification of the proposed Class;

B.      Appointment of Plaintiff as representative of the Class;

C.      Appointment of the undersigned counsel as counsel for the Class;

D.      A declaration that Defendants' actions complained of herein violate the TCPA;

E.      An order enjoining Defendants from making automated or pre-recorded calls;

F.      An award to Plaintiff and the Class of damages, as allowed by law;

    G.      Attorney's Fees as allowed by the Maryland Telephone Consumer Protection Act;

    H.      Leave to amend this Complaint to conform to the evidence presented at trial; and

    I.      Orders granting such other and further relief as the Court deems necessary, just, and proper.

## JURY DEMAND

**Plaintiff requests a jury trial as to all claims of the complaint so triable.**

*/s/*_____
Stephen H. Ring, Esq.
STEPHEN H. RING, PC
9901 Belward Campus Drive, Suite 175
Rockville, Maryland 20850
USDC-MD Attorney No. 00405
Telephone (301) 563-9249
Facsimile (301) 563-9249
shr@ringlaw.us

Attorney for Plaintiff